The Honorable the Judges of the United States Court of Appeals for the Fourth Circuit. All right, be seated please. Next case we'll hear is Tyler v. Hooks and Mr. Andrews, I think. Good morning and may it please the court, Damon Andrews for the appellant Casey Tyler. The hearing officer violated Tyler's constitutional rights in three ways. First, the officer found that there was some evidence that Tyler committed the A18 offense when in fact there was no evidence in violation of Hill. Second, the officer refused to allow Tyler to present documentary evidence, namely a video from the chapel in violation of Wolfe. And third, the officer refused to explain why Tyler himself could not view the video in violation of Ponte. On each and all of these grounds, the court can and should reverse the grand... Your last round is not in the certificate of appealability. It's not in the COA, but it's under the penumbra, the umbrella of the video issue on which you kind of go hand-in-hand if he's not presenting it. Yeah, but it's not in the certificate of appealability. What authorizes you to argue that? It's again, these two cases, the Ponte and Wolfe, go hand-in-hand with the video evidence. Right, they may do it, but the last category is not in the certificate of appealability. Fair enough. That exact issue is not presented in the COA. With respect to the some evidence issue, the A18 offense has three elements for which there must be some evidence for each for Tyler's conviction to comport with due process. First, Tyler must have made a false allegation against a staff member. Tyler must know that the allegation is false. And third, Tyler must know that the allegation, if true, could subject the guard to criminal liability. And I'll start with knowledge that the allegation was false. Even if the hearing officer weighed all the evidence and concluded that the allegation was false, and I'll put a pin in that now because we can test that conclusion, there is not some evidence that Tyler knew the allegation was false. And I'll take it by the state's failure to address any of the Supreme Court decisions we cited regarding knowingly in a statute, and those are Flores-Figueroa, McFadden, Liparota, and most recently, Raheef, this past summer, for which the state did not respond to our  distinction whether or not there was some evidence that he knew the accusation was false or that he knew the accusation was false and would subject the prison guard to criminal liability. It seems like to me there's a distinction there. I think those are two separate elements. He must both know that it was false and separately know that it subjects the guard to criminal liability. And this is what Flores-Figueroa did. It walked through the statutes and the cases and examples, and we identified those in our opening brief that says, knowingly applies to each element of the offense after that. And again, the state did not address that at all. In fact, they cited five cases to say that knowledge of the law is sufficient. Each of the five cases deals with an Edbo limitations period. And just to address the knowledge of the criminality, in Raheef, again, no response to the letter, the Supreme Court discussed Liparota and said in that case, the government was required to, quote, prove that the defendant knew his use of food stamps was unlawful, even though that was a question of law. So again, I'll address the knowing the criminal liability, but knowingly certainly applies to each element of this offense. Well, I mean, we're talking about an administrative offense here, correct? Correct. And we're going to take Raheef and what preceded it and insert that into these administrative charges as well as an element of the administrative crown? I think that the closest analog we have to this administrative offense, effectively, which can, you know, lengthen his sentence, is a statute. So yes, knowingly should operate the same in this offense, which lengthens the offense as it would in a statute, which would impose a sentence in the first offense. Why do you need to get into the elements? I thought your argument really was that they recited no evidence to support what they did. Gaddy said he had no evidence. No knowledge. Tyler said, basically, they failed to prove the case. Unit manager said it was unfounded. And the video was reported to have neither helped nor hurt. So the question is, where is the evidence? Some evidence is required by Hill. We don't disagree. I know. That's your argument. And the question is, does it matter whether you focus on one or another element of the charge? If the state fails to carry its burden, and it's important, it's its burden. Both the district court and the hearing officer look to switch the burden to Tyler. But if the state fails to carry its burden on any one of those elements, then it hasn't made its case and his due process was denied. And that is our argument, that on any of the elements, there is not some evidence. And I'm happy to walk through each of them. But that's exactly our argument, that the state couldn't be... I gave you the full summary of what the record showed from the evidence they relied on. And we don't disagree that the statements are neutral at best and certainly don't point to Tyler's guilt or make him incriminating. If we credit your argument, for instance, it would be unnecessary to attempt some definition of the some evidence standard if there is no evidence. I think some evidence is what the Supreme Court says, some evidence. But yes, if there's no evidence, I mean, there has to be even... Nobody knows what some evidence is. That's part of the problem. That's why I'm asking you. Is there any need in this case, if we were to agree with you, as to what some evidence is? It's just no evidence is not some evidence. Yes. Zero does not equal one, Your Honor. That's what I thought your argument was. I guess your backup argument would be, if any of those factors were to be found to be some evidence, then you're saying that elements were not demonstrated by that evidence. That's correct. All right. Does that cover it pretty much? We think so, unless the Court has questions. Again, he must meet three elements and the other two are the evidence. With respect to the video, which is a separate right under Wolfe, Wolfe is clear that inmates have the right to present documentary evidence in their defense, and the state argues that it would be a new rule to have an impartial trial act to be the person to actually view the evidence when the charging officer has said it's not relevant. In other words, the is something that is pretty concerning and distinctly wrong when the investigator is also the charging officer and also the de facto fact finder. This is not akin to law enforcement collecting the evidence, the DA or the U.S. Attorney's Office deciding to bring the charges. All right. We're here on a 2250 trial. Is that right? A 54, Your Honor. All right. So, Mr. I forget your client's name. Mr. Tyler. Tyler. He's a state prisoner. Yes. So, he's subject to Edmund. Correct? Yes. So, what we're looking at is what was the clearly established law at the time of the relevant state court decision. Yes. Correct? So, what was it? I think it was very clearly established. Wolf is a decision from 1974 to present documentary evidence in your defense. And I think this court's decision in Lanier just this past summer announced the principles from Wolf and recited cases from the 3rd, the 7th, and the 10th Circuit dating back to the 90s. Lanier has dated all the proceedings in this case. And several points in the Lanier case, the court was very specific to say, this court has not addressed whether the universe of documentary evidence subject to due process protections recognized under Wolf encompasses video surveillance. We now hold that it does. And the court went on to say that again. We established for the first time in this circuit. And I think that's important. First time in this circuit. Lanier also said, it did not But the point is, what was the clearly established law at the time? Lanier tells us. This was, no. Yeah, it does. It says this has not been established in the 4th Circuit before. Lanier says. And the Supreme Court has not said this. Lanier says, quote, these principles, all the principles, Your Honor, just recited, reflect existing and controlling Supreme Court case law. And that's Lanier 937 at 274. Reflect existing and controlling Supreme Court case law. So agree that it was the first time in this circuit. But other courts had done this. Again, Wolf is from 1974. And Lanier expressly recognized this. We're looking at what the Supreme Court has said. And the Supreme Court, even today, has not said with any specificity that this sort of documentary evidence comes in under Wolf. In fact, it's had a number of cases where it sort of tried to distance itself from Wolf. So all that you have to look at here is, what was the clearly established law? Was it debatable? And you've got lots of cases from district courts and others that said, no, you didn't have a right to have this documentary evidence. So I'm happy to address the cases the state cites, which are all unpublished. And they are not on all fours. I would say they're not even on two of four with the facts here. And they're in our reply brief at pages 5 to 7. We address each of them. Just to name a few, Neal B. Casterling, the inmate had access to the complete tape and actually submitted six still photos from the tape. So he had access to the video evidence. Arsinovi, the person, the inmate did not request the video before or after the hearing. Guerrero B. Rechtenwald, the inmate's own statement supported the guilt. So again, Lanier says, these principles reflect existing and controlling Supreme Court case law. And that's a published decision from this circuit looking back at what the principles reflect in its Supreme Court case law. And what the state is saying is that the judge essentially can outsource its duties to the hearing officer. Again, the hearing officer, or the investigating officer in this case, both conducted the investigation, charged Mr. Tyler, and also was a de facto fact finder at the hearing because the prison judge just deferred. We recognize Tyler does not have an absolute right himself to view the video, but if the request for access is denied, as here, then that determination must be made by the impartial trier of fact, not the charging officer. As the Third Circuit recognized in the Burns case, which is almost a decade old, the right to present evidence is, quote, no right at all if the hearing officer can decide not to view it based on the prosecuting officer's description of it. And this is the same in the Howard case, where the evidence was deemed needlessly accumulative by the charging officer. And the court said, how do we know it's needlessly accumulative until someone reviews it? Which is exactly the case here. They said, eh, it neither confirms nor denies, but the impartial trier of fact has to be the individual to make that determination. Is that it? If there are no questions, I'll reserve the rest of my time for rebuttal. Okay, thank you. Mr. Delfort? Yes, good morning, Your Honors. Objectively reasonable decisions by state courts under existing Supreme Court precedent must be upheld on federal habeas review. And in this case, the state court, the Scotland County Superior Court, had in front of it two cases out of its own district that are virtually thumbprints of this case, in which the district court held that there was no due process obligation on the part of the DHO to personally review the surveillance video, and that the DHO could rely on the investigating officer's written summary of that video. And one of those cases, this court even dismissed the appeal, found no substantial constitutional issue. So your point there, I think it is that as of the time this was determined in the state court, a fair-minded jurist could disagree as to what the clearly established law was. Yes, Your Honor. And the evidence was that the video had been looked at and neither hurt nor helped. Yes, Your Honor. And therefore was not necessary to produce. Yes, Your Honor. Now, to address the Hill issue, which I think is a little dicier for you. Yes, there is some evidence. It's what could a reasonable jurist construe Officer Gaddy's statement as a denial. It was a common-sense denial. It wasn't written well. Who testified to that? What evidence was that? That was the statement of Sergeant Gaddy where he said he had no knowledge of the incident. And that is a common-sense denial. It could have been written better. It was not. Let's assume that it's a denial. He says, okay, this didn't happen. So perhaps that proves that there was a false report. But this particular charge, as I understand it, was not that the inmate filed a false report to a prison officer. Maybe that's a separate offense in the disciplinary infractions. But it was a false report that the inmate knew would subject the prison employee to a criminal penalty. So what's your best evidence that there is evidence of that entire string of necessary points? The nature of the charge itself. If you look on the other side of the coin of that, if he had actually committed a sexual assault on this inmate, it would be absurd to say that the inmate didn't know that that would subject the officer to criminal liability. This man knew, he knew, obviously knew, that this kind of allegation could result in criminal liability to the officer involved. And it's also what an objectively reasonable person could arrive at that conclusion. It's not whether this court on its own de novo review would do that. It was unfounded, correct? That whatever charge he brought was unfounded. The initial incident report, Officer Gerald found it was unfounded. So is unfounded synonymous with intentionally false? These are not attorneys, Your Honor. I think common sense reading. Try to answer that question. Yes, yes, it is. It is. Unfounded is synonymous with false. It's denied. There's no evidence. But it sounds to me, Gaddy says no knowledge and the unit manager says unfounded. And the video is described as neither helping nor hurting. And Tyler says it failed to prove the case. Those are conclusory statements that I don't see any evidence. That's my problem under health. Maybe that is evidence. Your argument, I guess, is when somebody says I have no knowledge of that incident. Is it because he didn't remember it? Or you're suggesting he's denying it. Well, three judges have determined that that was tantamount to a denial. And that, I think, is strong evidence that it's objectively reasonable for the state court to determine that that was a denial. And that it was objectively reasonable for the state court to determine that there was some evidence here. And that's proven by the fact that the magistrate judge and the district court judge, the DHO and the state court itself, all four determined that that statement was tantamount to a denial. Well, that's what they concluded. But did they do a Hill analysis? I can't remember. Well, the state court's adjudication was summary. But that still gets deferential review. It's a summary. I understand that. Did anybody recognize or apply Hill? It was not articulated in anybody's decision. Certainly the DHO didn't say anything about Hill. Counsel, I think along the same lines as what Judge Niemeyer was talking about, we've got two questions. We have the initial complaint by the inmate about a sexual assault, an alleged sexual assault. And there's evidence there that may not have happened. You have what you call tantamount to a denial. You've got someone else reviewing the video saying it doesn't show either way. But what we're here talking about is a different set of questions of was this intentionally false and did this inmate know that there was potential criminal liability. And I guess my struggle is, yeah, there's probably some evidence that the underlying incident happened. But that's not really what we're talking about here today. We're talking about is there some evidence to support the stripping away of the lost time credits? Well, I would say that yes, yes, that if he made this false allegation, he knew. And you should say that. And I guess my question is what is that some evidence as opposed to no evidence? The nature of the offense itself. If this sexual assault had occurred, it would be absurd to say the inmate wouldn't know that the guard couldn't be charged. Oh, I think you're exactly right. That's the opposite side of the coin. I think it's an absurd assumption that he wouldn't know. But doesn't there have to be something in the record that we can rely on to say, well, there it is. There is the some evidence. No inmate's ever going to admit. They say, oh, yeah, I knew this was a criminal offense. I mean, it's the nature of the offense, the nature of the charge itself, and the denial by the officer is sufficient evidence in this case. It's some evidence in this case. That's just, that's the only evidence there is. I mean, he denied it. He made the allegation. He may have filed a grievance. The grievance was denied. So we have to assume when he says I have no knowledge of the incident that he meant it didn't occur. Yes. And then infer from the fact it didn't occur. Therefore, when he filed the statement, he knew it was false. Yes. He could not have made a mistake or he could not have, or some other. In other words, I guess we're getting to the question that Judge Agee raised initially. Are we talking about no evidence? Are we talking about some evidence? And then the question is under Hill, what does some evidence mean? It's a pretty dicey little area. I mean, you either construe the denial as a denial. It was not written well. You either construe it as a tantamount to denial or you don't. No, he didn't remember. This is an allegation of sexual assault. This is a very serious matter. Well, it's the nature of the assault. I don't know if it's a common practice. The allegation, though, is sort of a passing touching when he's patting him down. And the way they described it, and he may do that to everybody, I don't know, but this guy thought it was a sexual assault, whereas the other officer says it's just a pat down. And so the real question is if they disagree about that, then what are the consequences when the officer, I mean the inmate, files a charge and they both agree are the facts. So the officer says, I was patting down. That's our normal procedure. And the other inmate says, no, he's touching me. That's about what the accusation is here. It's a touching, as Jim will tell you, while he's patting him down. And they could both subjectively, in their own minds, be right. Well, if he thought that he had been sexually assaulted. Well, he clearly did because he made a complaint. Then it is absurd to say that he didn't know that that sexual assault would subject the officer to criminal liability. But it doesn't prove that he did so knowingly false. In other words, his falseness could be based, the ultimate falseness, could be based on different interpretations of what a sexual assault is. And in which case he doesn't knowingly create a false statement. And you get my point. I get your point, exactly, Judge Meemeyer. And I understand your point, the idea that the guard says, I have no knowledge of that. And let's just assume, my hypothetical is, that he's patting everybody down and there may be some accidental touching here and there. And from his point of view, I don't know anything about what he's talking about. And from the inmate's point of view, he says, I felt the touch and I thought it was inappropriate. Now he files a charge. That's not knowingly false, that charge, on the inmate's point of view. And the officer's not lying. But we have to get a little more, don't we, to get a charge? Well, short of getting in the mind of the inmate and asking the inmate, he's never going to say, oh, yeah, I knew it was a criminal liability. You're setting up an inmate. Your argument is that it never occurred. That's correct. Then it has to be false. That's correct. And I'm suggesting the alternative is that the real facts occurred, whatever they might be, but the two people had different interpretations of what occurred. And in this kind of violation, this isn't where he was raped or disrobed or anything. He was being patted down and touched. And the officer says, I just patted him down. And the inmate says, no, you were more than patted down. And so neither is lying. They're just giving different interpretations, if it's a denial. But that doesn't make the inmate knowingly filing a false charge. We can never prove that charge then because the inmates are never going to say, oh, yeah, I knew it was a criminal liability. You're setting up an unsolvable conundrum that I don't think is warranted by the facts of the case. Let me ask you this, counsel. I lost 20 days. That's the whole thing we're fighting about, right, 20 days? That's correct, Judge. That is correct. I'm sorry, Judge. I agree with you. I think it is an absurd proposition to think that an allegation of sexual assault would subject an individual to criminal penalties. I think we may not agree that there's some evidence of that. But where do we draw that line? I mean, there's all manner of obscure criminal statutes out there that I doubt the lawyers in the room can tell you whether something was a crime on a given day, depending if it's in a reg or a statute somewhere. Where do we draw the line? Here we have a bright line, I think. But what if it's something less well-known that you shouldn't do this and you're subject to criminal penalties? Well, you have to take each case on an individual basis. Again, I think the nature of the offense is critical. If this had been something, you know, I don't know, some other kind of minor offense that wouldn't be so patently obvious that it would subject the alleged perpetrator to criminal liability, then, yeah, it would be a problem. It would be a problem. But here, sexual allegations against officers are very serious matters. And this inmate knew. He knew that that allegation could potentially subject the officer to criminal liability. And it's just absurd to suggest otherwise on these facts in this case. And certainly the state court's determination of that was objectively reasonable, whether this court might disagree on that point or not. You know, you've got to give the state court an objectively reasonable leeway here. And that's my some evidence argument, unless Your Honors have any further questions. No, I understand it. Thank you. Thank you, Your Honors. Thank you. Mr. Andrews, you have some rebuttal? Thank you, Your Honor. I want to go back to the question Judge Agee asked about, do we have to say how much evidence is some evidence? And I think the answer is no, because here there is no evidence of any of the three elements of the A18 offense, let alone all three of those elements. I want to return to the guard statement. My opposing counsel said, you know, it's just a guard statement. He's not a lawyer. The form the guard was asked to fill out, and this is on JA3, asked the guard to, quote, give a factual account of the event's witness. Of particular importance is information as to what was observed, where and when it occurred, who was involved, and any factual information relevant to possible reasons for misconduct. So the guard had the platform to say, I didn't assault him, I didn't do this, and all he says is, I don't know what he's talking about. And we're not looking to require guards to say magic words here, but it is odd phrasing, given the ask on the form, given the question. All he says is, I have no knowledge of the, quote, disciplinary issue, which, again, as we argue in the brief, isn't even the assault. It's the report of the assault that's the disciplinary issue here. As to the knowledge of the criminal liability, Judge McLee, you had said, well, it's probably presumed. A couple things in response. There are a lot of statutes. 1983 comes to mind, a civil liability statute, where the prisoners might know, hey, if the guard does X, Y, or Z, I consume under 1983. That's not a criminal liability statute. PREA that's mentioned, the Prison Rape Elimination Act, is not a liability statute. PREA established a commission and is a policy objective in resolution. It is not a liability statute. And so the government cannot shirk that one element of the case. I mean, that's tantamount to saying, you don't have to do this, and essentially overrule Flores-Figueroa. They have to carry the burden as to every element of the offense. And even if he knows conduct is wrong, wrong, or maybe this subjects the guard to 1983 liability, is not the same as criminal liability. On the deference to the evidence, on the video, again, we think that it was established under the Supreme Court law in Wolfe that hearing officers have to review the video. And again, I would direct the court to the statement in Lanier that said, these principles reflect existing Supreme Court case law. But even setting that aside, on the evidentiary issue, the other reason there is no deference is that if there's an unreasonable determination of facts in light of the evidence. And that is the case here, that the court says, or the state court said the hearing officer was correct to say the statement was false. He knew it was false. He knew it was criminally liable. And there just are no facts that address that. I'd also like to point out that, you know, Tyler said one thing, and the guard said another thing. And in this case, the magistrate judge noted that petitioner stated under penalty of perjury that he was sexually assaulted by the guard. So there's nothing to, there's no adverse credibility findings. He says, under oath, assaulted by the guard. And the Seventh Circuit said in the Johnson defeating case, because Johnson has sworn under oath that he made timely requests for this evidence, the district court could not properly assume the state's perspective is the right one. So even if there is a factual dispute as to whether it happened, that is not evidence that he knew it to be false. And I would just leave the court, I'd ask the court to step out of the prison context here and to think about regular police investigation, where local police are running the investigation, they charge the defendant, and local police tells the judge, and this is regarding the video, no, it's fine, I looked at it, the evidence is good, and the judge says, okay, great, defendant, you're guilty. I don't think anyone in this room would say that is due process in the United States. And the state wants to say because it's in the prison context, it's different. Which officer made the statement that it neither helped nor hurt? That was the charging officer, who was the investigating officer. So you've got the, again, the investigating officer looking into the allegation, also is the person bringing the charges, and also is the person that the hearing officer defers to. That person has three roles now, most importantly, the de facto fact finder, which, again, even with reduced due process in the prison system, it has to mean something. I mean, this is, that notion predates even Wolf, Hill, all the cases. That goes back to the framing era, arguably the Magna Carta, which is the foundation for the 14th Amendment. So that notion is not new at all. And we respectfully submit that you reverse the district courts, grant a summary judgment, and grant the petition. Thank you. Mr. Andrews, I understand you are court-appointed. Yes, Your Honor. I want to recognize your service and your good job. It's very important. And thank you for your good service in this case. Thank you, Your Honor. We'll come down in Greek Council and proceed to the last case.
judges: Paul V. Niemeyer, G. Steven Agee, Thomas S. Kleeh